H. V. TEMPLE, RECEIVER, v. T. L. CARROLL ET AL.

FILED NOVEMBER 22, 1905.   No. 13,903.

1. Checks: PRESENTATION FOR PAYMENT.  Due diligence in the presentation of a check for payment does not require the holder, in the absence of special circumstances or some special custom, to present it at other than banking hours for payment.

2. ——: ——: NEGLIGENCE.   When the failure of a bank, holding a check as indorsee, to present it for payment is predicated on some act or omission of one of its agents having authority to make presentation, it is not excused by the fact that such agent was ignorant of the existence of the check.

3. Instructions examined and criticised.

ERROR to the district court for Dawson county: BRUNO O. HOSTETLER, JUDGE.   *Reversed.*

*Warrington & Stewart,* for plaintiff in error.

*E. A. Cook, John A. Sheean* and *Edson Rich, contra.*

Albert, C.

On the 27th day of May, 1901, the defendant Carroll made a check on the People's State Bank of Gothenburg, in favor of "L. J. Morton, Agt." On the same day, about 4 : 30 P. M., and after banking hours, Morton indorsed and transferred the check to the State Bank of Gothenburg. It was the practice of the two banks to "clear" between 3 and 4 o'clock each day, that is, representatives of the two banks would meet and take up the checks held by the one against the other. About 8 : 30 A. M., the day following the making and transfer of the check, the president of the State Bank, having reason to believe that the People's State Bank was in a failing condition, took the check in question, with the other checks held by his bank against the People's State Bank, for the purpose of presenting them to the latter for payment. The banking hours of both banks were from 9 A. M. to 4 P. M., and he found the bank closed. Without returning to his own bank, he called at the People's State Bank a second time, and found it in the hands of a state bank examiner and closed to the transaction of business. It was insolvent and never resumed business. The exact time at which the second call was made is one of the matters in dispute; the evidence, on the one hand, tending to show that it was as early as 9 o'clock, while, on the other, it tends to show that it was as late as 10 o'clock. During such absence of the president from his own bank, an employee of the People's State Bank, acting under the directions of the state bank examiner, took the checks held by it against the State Bank and presented them to the latter for payment. There is evidence tending to show that the State Bank, at the same time and place, presented certain checks against the People's State Bank which it had cashed during the absence of the president. Whether it did hold and present such checks is another point in dispute, and the evidence would sustain a finding either way. A clearance was effected, however, and some cash passed to the

People's State Bank to adjust the amount found due it; but the amount thereof, and whether the same was equal to or in excess of the amount due on the check in suit, is not shown. Neither such check nor any of the checks taken by the president of the State Bank to present to the other bank were included in the settlement. The check was never paid, and this action was brought by the receiver of the State Bank against the maker and indorser. The nominal payee and indorser was acting as agent of the Union Pacific Railroad Company, and the case was tried on the theory that the railroad company was the real payee. The defense relied on is that the plaintiff's bank failed to exercise due diligence in the premises. Judgment was given in favor of the defendants.

One of the grounds upon which the plaintiff urges a reversal of the judgment in this case is the giving of the following instruction: "You are instructed that, if you find from the evidence that the State Bank of Gothenburg had notice of the failing condition of the People's State Bank at the time it received the check, then it was the duty of the said State Bank of Gothenburg to present the check for payment forthwith to the People's State Bank." Two complaints are urged against this instruction: First, that there is no evidence tending to show that the State Bank had notice of the failing condition of the People's State Bank at the time it received the check; second, that it requires a presentation of the check outside banking hours. As to the first, the evidence is clear that on the morning after receiving the check the president of the State Bank had reason to believe that the other bank was in a failing condition. Just when or how he acquired this knowledge does not appear, but, taking into account all the facts and circumstances in the case, we are inclined to think there was sufficient evidence to warrant that portion of the instruction. But the other complaint is more substantial. The State Bank received the check after banking hours, and in the absence of special circumstances, or some special custom, not shown in

this case, the holder of a check is not required to present it for payment after banking hours. But under this instruction the jury were told, in effect, that it was the duty of the State Bank to present the check for payment as soon as it received it, although the banking hours were over for the day. The instruction is therefore erroneous and prejudicial.

Another instruction of which the plaintiff complains is as follows: "The court instructs the jury that, if you find from the evidence that the State Bank of Gothenburg and the People's State Bank cleared accounts on the morning of May 28, 1901, and at that time the State Bank of Gothenburg, having reasonable grounds to believe that the People's State Bank was in a failing condition, paid over to the People's State Bank an amount equal to or greater than the check in controversy, then the failure of said State Bank of Gothenburg to retain sufficient funds for the payment of the check in question will prevent recovery by the plaintiff in this action, and your verdict will be for the defendants." One objection urged against this instruction is that "there is no evidence that the person who 'cleared' for the State Bank had any knowledge of this check." Such evidence was not necessary to warrant the instruction. The bank had received and cashed the check over its counter. It left its affairs in the hands of the person who effected the clearance, and it is not claimed that such person was not authorized to make the settlement. If the bank saw fit to withhold from such person the information necessary to enable it properly to conduct the business intrusted to it, it cannot urge its ignorance as an excuse for a lack of due diligence on its part. The instruction, however, is open to the objection that there is no evidence to support a finding that the State Bank, at the time of the settlement, paid over to the other bank "an amount equal to or greater than the check in controversy." The extent to which the evidence goes on that point is that the amount paid was small. The instruction therefore is erroneous.

We recommend that the judgment be reversed and the cause remanded for further proceedings according to law.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED.